UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KIMBERLY HOOD,                          )
                                        )
            Plaintiff(s),               )
                                        )
     vs.                                )          Case No. 4:08CV1975 JCH
                                        )
AARON RENTS, INC.,                      )
                                        )
            Defendant(s).               )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Aaron Rents, Inc.'s ("Aaron" or "Defendant")

Motion for Summary Judgment. (Doc. No. 31). This matter is fully briefed and ready for disposition.

## BACKGROUND

On or around February 27, 2006, Brad Martin, Regional Manager, hired Plaintiff Kimberly

Hood ("Plaintiff" or "Hood") as a customer accounts manager at Aaron's O'Fallon, Missouri

location. (Defendant Aaron Rents, Inc.'s Statement of Uncontroverted Material Facts in Support of

its Motion for Summary Judgment ("DSUMF"), Doc. No. 32-2, ¶ 1). On May 23, 2006, Plaintiff was

promoted to sales manager at the O'Fallon store. (DSUMF, ¶ 2).[1] On September 4, 2007, Plaintiff

was promoted to general manager of the O'Fallon location. (Pl's Depo.,[2] pp. 144).[3]

---

[1]Defendant states that Brad Martin promoted Plaintiff to sales manager (DSUMF, ¶ 2), but Plaintiff asserts that Gil Valezquez promoted her (Plaintiff Kimberly Hood's Answer to Defendant Aaron Rents, Inc.'s Statement of Uncontroverted Material Facts in Support of Its Motion for Summary Judgment and Statement of Uncontroverted Material Facts in Opposition to Defendant's Motion for Summary Judgment ("PSUMF"), Doc. No. 33,¶ 2).

[2]Excerpts from Plaintiff's deposition can be found at Doc. Nos. 32-3, 32-4, 32-5.

[3]Defendant states that Brad Martin promoted Plaintiff to general manager (DSUMF, ¶ 3), but Plaintiff asserts that Todd Coppedge promoted her (PSUMF, ¶ 3).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

## DISCUSSION

### I. Sex Discrimination/Harassment

#### A. Prima Facie Case for Sex Discrimination

Section 213.055 of the Missouri Human Rights Act ("MHRA") prohibits employers from engaging in discriminatory employment practices, including wrongful termination. Plaintiff's sex discrimination claim can survive summary judgment if there is a genuine issue of material fact as to whether her sex was a "contributing factor" in Defendant's decision to terminate Plaintiff. Daugherty v. City of Md. Heights, 231 S.W.3d 814, 820 (Mo. 2007) (applying the Missouri approved instruction for MHRA claims to the summary judgment analysis). "A 'contributing' factor has been defined as one 'that contributed a share in anything or has a part in producing the effect.'" Williams v. Trans States Airlines, Inc., 281 S.W.3d 854, 867 (Mo. Ct. App. 2009) (citing McBryde v. Ritenour Sch. Dist., 207 S.W.3d 162, 170 (Mo. Ct. App. 2006)). "The discrimination need not be a substantial or determining factor in the challenged employment action." Stanley v. JerDen Foods, Inc., 263 S.W.3d 800, 803 (Mo. Ct. App. 2008).

When reviewing cases under the MHRA, courts "are guided by both Missouri law and any federal employment discrimination law consistent with Missouri law." Williams v. Trans States Airlines, Inc., 281 S.W.3d 854, 866 (Mo. Ct. App. 2009) (citing Daugherty, 231 S.W.3d at 818). "Missouri's discrimination safeguards under the MHRA, however, are not identical to the federal standards and can offer greater discrimination protection." Daugherty, 231 S.W.3d at 818-19. "To withstand summary judgment under the provisions of the MHRA, plaintiff must establish a genuine issue of material fact as to whether [sex] was a 'contributing factor' in [the employer's] adverse employment action." Jackson v. GM, No. 4:06-CV-1378, 2007 U.S. Dist. LEXIS 90320, at *27 (E.D. Mo. Dec. 7, 2007) (citing Daugherty, 231 S.W.3d at 820).

1.      Legitimate Job Expectations

To establish a prima facie case of employment discrimination under both Title VII and the MHRA, a plaintiff must show, among other things, that her job performance met her employer's

legitimate expectations. Mitchell v. Parkway Sch. Dist., No. 93-1657EM, 1993 U.S. App. LEXIS 26133, at *1-2 (8th Cir. Oct. 8, 1993) (citing Miner v. Bi-State Dev. Agency, 943 F.2d 912, 913 (8th Cir. 1991); Midstate Oil Co. v. Missouri Comm'n on Human Rights, 679 S.W.2d 842, 845-46 (Mo. 1984) (en banc)).

The record before this Court demonstrates that Plaintiff was issued seven (7) written counselings regarding her work during her three (3) month tenure as general manager of the O'Fallon store. (Memorandum in Support of Defendant Aaron Rents, Inc.'s Motion for Summary Judgment ("Memorandum in Support"), Doc. No. 32, p. 6). During Plaintiff's tenure as the general manager, the O'Fallon store had the lowest net profit store performance of the nine stores in the St. Louis region. (Memorandum in Support, p. 6). Based upon this evidence, the Court finds that Plaintiff was not meeting Defendant's legitimate job expectations. Shanklin v. Fitzgerald, 397 F.3d 596, 603 (8th Cir. 2005) (because plaintiff failed to demonstrate that she met the her employer's legitimate expectations, she failed to establish a prima facie case of race discrimination under the MHRA and Title VII).

Plaintiff's seven write-ups were all well documented and their substance does not appear to be in dispute. On October 9, 2007, Baker issued a written counseling to Plaintiff for failing to account for inventory and failing to supervise an inventory movement. (Declaration of Fred Baker ("Baker Dec."), Doc. No. 32-9, ¶ 3; DSUMF, ¶ 15; Pl's Depo., pp. 177-78). General managers were required to reconcile inventory by Wednesday of every week. (Baker Dec., ¶ 3). Plaintiff failed to reconcile the inventory yet verified that she had in the computer. (Id.) Plaintiff also failed to be present at the back door when inventory was moved, which is required to prevent theft. (Id.)[4] On

---

[4]Plaintiff testified that either the general manager or the assistant general manager could be present at the back door when inventory movement took place. (Pl's Depo., p. 138).

November 6, 2007, Baker issued Plaintiff a written counseling for not calling past due accounts, having the highest number of customers in the region with past due accounts and having the lowest percentage of past due collections in the region. (Baker Dec., ¶ 4; DSUMF, ¶ 16; Pl's Depo., pp. 180-84).[5] Plaintiff was required to make calls to past due accounts herself but instead had another employee make the calls. (Baker Dec., ¶ 4).[6] On November 7, 2007, Martin[7] issued Plaintiff a written counseling for several performance issues, including failing to secure store assets, failing to be present at the back door during inventory movement, failing to properly reconcile her inventory, and delivering to customers without written agreements. (Declaration of Brad Martin ("Martin Dec."), Doc. No. 32-6, ¶ 9; DSUMF, ¶ 17; Pl's Depo., pp. 184-85).[8] On November 20, 2007, Martin

---

[5]Plaintiff did not dispute that the O'Fallon store had the highest number of customers who were past due in payments on their accounts in the region but Plaintiff suggested that number was inflated because of the O'Fallon store's small customer base relative to other Aaron's stores. (Pl's Depo., p. 183).

[6]Plaintiff was aware that she was supposed to make all quality control follow-up calls. (Pl's Depo., p. 138).

[7]At all times during Plaintiff's employment, Martin was the regional manager for Defendant. (Pl's Depo., p. 120). Martin initially hired Plaintiff for a position as a customer accounts manager at the O'Fallon, Missouri store. (Pl's Depo., pp. 120-21). Martin hired Plaintiff and Defendant claims that he also promoted Plaintiff to the position of general manager. (Memorandum in Support, p. 7). Martin terminated Plaintiff three (3) months later. (Id.) Martin was aware of Plaintiff's sex when he hired her and, therefore, Defendant is entitled to an inference that it did not discriminate against Plaintiff when she was terminated three months after she was promoted to position of general manager of the O'Fallon store. Owens v. United States Dep't of the Army, No. 08-1503, 2009 U.S. App. LEXIS 4066, *11-12 (8th Cir. Mar. 2, 2009) (where the same person both hired and fired the plaintiff, an inference arises that his decision was not motivated by discriminatory animus); Peterson v. Scott County, 406 F.3d 515, 522 (8th Cir. 2005); Herr v. Airborne Freight Corp., 130 F.3d 359, 362-63 (8th Cir. 1997).

[8]Martin noted that a general manager was required to monitor the back door for merchandise delivery to ensure that there was no theft of inventory. (Martin Dec., ¶ 9; DSUMF, ¶ 4). Martin also stated that Plaintiff allowed merchandise to be delivered to two customers who had not signed purchase agreements with Defendant to pay for merchandise. (Id.)
Plaintiff admitted that she was not present at the back door for every inventory movement.

issued Hood a written counseling for failing to complete the reconciliation of the inventory at the O'Fallon store and failing to verify that the reconciliation had been done in the computer. (Martin Dec., ¶ 10; DSUMF, ¶ 18; Pl's Depo., pp. 197-99).[9] On November 27, 2007, Martin issued a written counseling for failing to reconcile and complete her inventory by the Wednesday of the previous week. (Martin Dec., ¶ 11; DSUMF, ¶ 19; Pl's Depo., pp. 199-200). On November 28, 2007, Martin issued Plaintiff a written counseling for indicating in the computer that she had reconciled the O'Fallon's store's inventory when she had not. (Martin Dec., ¶ 12; DSUMF, ¶ 20; Pl's Depo., pp. 201, 203-04).[10] On December 3, 2007, Martin issued a written counseling to Plaintiff for failing to secure store assets. (Martin Dec., ¶ 13; DSUMF, ¶ 22; Pl's Depo., pp. 219-22).[11] Based upon all of these infractions, Martin decided to terminate Plaintiff's employment after the December 3, 2007 counseling. (Martin Dec., ¶ 14).

In response, Plaintiff does not dispute the substance of the write-ups, but deflects the blame to her superiors. First, Plaintiff asserts that she did not violate Defendant's rules of conduct and that she performed her duties to the extent that she was trained. (Plaintiff's Response to Defendant Motion for Summary Judgment ("Response"), Doc. No. 34, p. 5). Plaintiff admits that she was written up multiple times for issues dealing with her inventory. (Id.) Plaintiff, however, disputes the

---

(Pl's Depo., p. 180).

[9]Martin attested that general managers were required to reconcile inventory by Wednesday of each week. (Martin Dec., ¶ 10). Plaintiff was required to scan the barcode on each piece of merchandise in the store to ensure that the merchandise that was physically present in the store was reconciled with the inventory indicated in the computer. (Id.)

[10]Martin believed that Plaintiff manipulated the computerized inventory system by printing out bar codes for missing inventory items and then scanning those codes into the system to create the appearance that she had reconciled the inventory. (Martin Dec., ¶ 12; DSUMF, ¶ 21).

[11]Plaintiff could not account for 3 televisions and 4 computers, and Plaintiff was unable to reconcile the washers and dryers. (Id.)

November 20, 2007 counseling because Martin caused Plaintiff to be unable to reconcile her inventory. (Id.; Reply in Support of Defendant Aaron Rents, Inc.'s Motion for Summary Judgment ("Reply"), Doc. No. 35, p. 3) Plaintiff claims that she could not reconcile her inventory because Martin needed to make adjustments to her inventory in the system, which he refused to do. (Response, p. 5; Reply, p. 3). Plaintiff does not dispute that she failed to reconcile her inventory with respect to the other four counselings for inventory issues. (Reply, p. 3, n. 2). In fact, Plaintiff admitted that there was merchandise missing that caused her inventory not to reconcile. (Id.) In response to the write-up for having the highest number of customers in the region with past due accounts, Plaintiff asserted that her past due accounts decreased during the two months after she became general manager of the O'Fallon store. (Response, p. 5).

Thus, Plaintiff offers no evidence, other than her bald assertions, to contradict Defendant's evidence that Plaintiff was not meeting Defendant's legitimate job expectations and, therefore, terminated Plaintiff's employment. Plaintiff admitted that she violated Defendant's rules of conduct policy on numerous occasions. (DSUMF, ¶ 25). Plaintiff admitted that she was counseled for failing to reconcile inventory and for having the highest past due accounts in the area. In response, Plaintiff questions the rationale for, not the basis of, these counselings. See Shanklin, 397 F.3d at 603 (plaintiff's questioning of her reported deficiencies is insufficient to create a genuine issue of material fact, where such assertions are totally unsupported by the record); McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861 (8th Cir. 2009) ("Disagreement with a decisionmaker's conclusion on the credibility of an employee's story, however, does not constitute direct evidence of unlawful discrimination."); Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994) (merely questioning the soundness of defendant's business judgment does not create an issue of material fact). Because Plaintiff failed to demonstrate she met Defendant's legitimate expectations,

she fails to establish a prima facie case of race discrimination. Davenport, 30 F.3d at 945 ("Defendant's identification of the four alleged infractions sufficiently set forth legitimate, non-discriminatory reasons for plaintiff's discharge."). A reasonable finder of fact would determine that Plaintiff's failure to meet Defendant's legitimate employment expectations caused Plaintiff's termination, and Plaintiff's sex was not a contributing factor in the decision to terminate her employment.

        2.      Stray Remarks

In her Complaint, Plaintiff alleges that certain statements provide evidence that she was subjected to discrimination and harassment. Plaintiff argues that the "derogatory" statements made by Baker and Martin provide evidence from which a trier of fact could reasonably conclude that Plaintiff's sex was a contributing factor in the harassment of her and in Brad Martin's decision to terminate her. (Response, pp. 6-7).

Plaintiff alleges that Baker told her that "women were not as tough as men" and that "girls were always having problems." (Plaintiff's Petition for Unlawful Discrimination Under the Missouri Human Rights Act (hereinafter "Complaint" or "Compl."), Doc. No. 1-4, ¶¶ 16(e), 16(f); Memorandum in Support, p. 15; Pl's Depo., p. 227). Specifically, Baker told her that Defendant typically does not place women in management positions because women are not as strong as men. (Pl's Depo., p. 227). Baker allegedly said that if it were not for women and all their female issues, then men would not have as much stress in their lives. (Pl's Depo., p. 227). During one of her counselings, Baker also asked Plaintiff if she was stupid because the answer to Plaintiff's question was in "black and white." (Pl's Depo., pp. 227, 230-31). Plaintiff also testified that she heard Martin comment about female customers, particularly regarding their breast implants. (Memorandum in

Support, p. 15; Pl's Depo., pp. 233-34; <u>see also</u> Compl., ¶ 16(d) (Plaintiff alleges she was "[s]ubjected to frequent derogatory comments about women")).

Thus, Plaintiff identifies only a few stray remarks made by Martin and Baker that could potentially form the basis for Plaintiff's discrimination allegations. "'[D]irect evidence' does not include 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.'" <u>Browning v. President Riverboat Casino-Missouri, Inc.</u>, 139 F.3d 631, 635 (8th Cir. 1998) (quoting <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).). The Court also analyzes these comments in the harassment portion of this Order, <u>infra</u>, but for purposes of establishing an inference of discrimination related to her termination on December 3, 2006, the Court finds that those comments were nothing more than stray remarks. <u>See</u> <u>Elnashar v. Speedway SuperAmerica</u>, LLC, 484 F.3d 1046, 1055 (8th Cir. 2007) (the court found that an associate manager's comments as to whether plaintiff had a harem and rode camels in Egypt did not raise a genuine issue of fact about whether unlawful discrimination was a motivating factor in the employer's decisions; the assistant manager's questions had no connection to the decisional process and were better characterized as stray remarks); <u>Girten v. McRentals, Inc.</u>, 337 F.3d 979, 983 (8th Cir. 2003) (granting summary judgment where plaintiffs failed to make a strong prima facie case, the evidence of pretext was virtually non-existent, and stray remarks were insufficient); <u>Fisher v. Pharmacia & Upjohn</u>, 225 F.3d 915, 922 (8th Cir. 2000) ("stray remarks, standing alone, may not give rise to an inference of discrimination" but may constitute circumstantial evidence that gives rise to an inference of discrimination). The statements identified by Plaintiff are unable to create an inference of discrimination.[12] <u>See</u> <u>Arraleh</u>

---

[12]Plaintiff alleges that she was subject to harassment and ridicule from her supervisors regarding her medical conditions. (Compl., ¶ 16(c)). Plaintiff alleges that Martin compared Plaintiff to his estranged wife, also named Kim. (Compl., ¶¶ 16(g), 16(h)). Although Plaintiff alleges that

v. County of Ramsey, 461 F.3d 967, 975 (8th Cir. 2006) (quoting Rivers-Frison v. Southeast Mo. Cmty. Treatment Ctr., 133 F.3d 616, 619 (8th Cir. 1998) ("'[N]ot every prejudiced remark made at work supports an inference of illegal employment discrimination.'").  Based upon the statements provided, a reasonable jury would not find that Plaintiff's sex was a contributing factor in the decision to terminate her.  For these reasons, the court finds that there are no genuine issues of material fact in dispute and that Defendant is entitled to summary judgment on Plaintiff's wrongful termination claim.

> ### 3.  Similarly Situated Employees

To establish a prima facie case of sex discrimination, Plaintiff must show: (1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) "similarly situated employees outside the protected class were treated differently."  Shanklin, 397 F.3d at 602 (quoting Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004)).

> #### a.  Termination/Write-ups

In support of her claim that she was terminated on the basis of her sex, Plaintiff claims that similarly situated males employees were treated more favorably than Plaintiff.  Plaintiff alleges that Sheldon Muhammad and James Pence were general managers that had performance issues but were not terminated.

---

"[t]he harassment and discrimination the Plaintiff was subjected to was based on her sex" (Compl., ¶ 17), these statements are not based on sex and cannot form the basis for her discrimination and harassment claims.

Although Muhammad and Pence may have been general managers, Plaintiff has not demonstrated that Muhammad and Pence had similar performance issues as Plaintiff. Plaintiff testified that she did not know how long Pence was employed by Defendant and she did not have any personal knowledge regarding Pence's performance other than one instance where Pence's store was missing two washers and a dryer. (DSUMF, ¶¶ 26, 30; Pl's Depo., pp. 237-38). Plaintiff also did not know how long Muhammad had been employed by Defendant and she knew of only one write-up for Muhammad. (DSUMF, ¶¶ 27-28, 30; Memorandum in Support, p. 8; Pl's Depo., pp. 238-39, 241-42).[13]

Because of Plaintiff's absence of knowledge regarding Pence's and Muhammad's alleged performance issues, Plaintiff has failed to provide evidence that they were similarly situated employees who were treated more favorably than Plaintiff. Plaintiff has provided only rumor and conjecture, which are insufficient to defeat Defendant's Motion for Summary Judgement. Davenport, 30 F.3d at 945 (although plaintiff maintained that similarly situated white employees committed the same infractions and yet were not discharged, plaintiff failed to present evidence other than his own unsubstantiated allegations in deposition and there was no genuine issue of fact on the issue of pretext and the ultimate issue of intentional discrimination). Plaintiff's termination claim cannot survive summary judgment on this basis.

       b.     Leave Requests

Plaintiff alleges that she was not permitted to take emergency leave that other similarly situated males were permitted to take. (Response, p. 9). Upon examination of Plaintiff's claims, however, the employees who were granted leave were not "similarly situated" to Plaintiff.

---

[13]Plaintiff also claimed to have general knowledge of inventory issues and of a missing television at Muhammad's store. (Pl's Depo., pp. 238-39).

Plaintiff asserts that her request to leave early on a Friday to visit her mother in Branson was denied. (Memorandum in Support, p. 9; Pl's Depo., pp. 247). Plaintiff alleges that Baker was permitted to leave early on a Friday on three (3) or four (4) different occasions and that James Pence was allowed to leave early on a Friday on two (2) separate occasions. (Memorandum in Support, p. 9; Pl's Depo., pp. 243-46).[14] Plaintiff, however, was not similarly situated to Baker and Pence when they requested leave. Baker was a regional accounts manager and Pence was a general manager. (Pl's Depo., pp. 244-47; DSUMF, ¶ 33) Plaintiff, however, was a sales manager when she requested leave. (Memorandum in Support, p. 9; DSUMF, ¶ 34; Pl's Depo., p. 247). Plaintiff admitted that she was not aware of the circumstances surrounding Baker's or Pence's requests for leave. (DSUMF, ¶ 31).[15] The Court finds that when Plaintiff requested leave she was not similar situated in all relevant respects to Pence and Baker. See Davenport, 30 F.3d at 945. Accordingly, Plaintiff cannot demonstrated that similarly situated males were treated better than she was with respect to leave requests.

c.    Long Shifts

Plaintiff claimed that she was required to work longer shifts than any other similarly situated general managers. (Memorandum in Support, p. 9). Plaintiff, however, could not testify regarding any other general managers who worked shorter hours than she worked. (DSUMF, ¶ 32; Memorandum in Support, p. 9; Pl's Depo., pp. 243, 247-48).[16] Plaintiff provided only

---

[14]Plaintiff claims that Pence told her that he needed to leave early because he was "stressed out" and Martin permitted Pence to leave early. (Pl's Depo., pp. 245-46).

[15]Defendant asserts that Plaintiff has not suggested that she requested "emergency" leave, unlike Pence and Baker. (Memorandum in Support, p. 9).

[16]Plaintiff claimed that the other general managers had vacation time but she did not know of any specifics regarding other general managers that worked shorter hours than she did. (Pl's Depo.,

unsubstantiated hearsay in support of her claim that other managers worked shorter hours than she did. Given that Plaintiff was unable to name any similarly situated general managers worked longer hours than she did, the Court cannot deny Defendant's Motion for Summary Judgment on this basis. Davenport, 30 F.3d 945.

    4.    Conclusion

Plaintiff failed to produce direct evidence showing that her termination was discriminatory. Defendant has demonstrated that Plaintiff failed to meet its legitimate job expectations. Plaintiff has not provided any direct evidence of discrimination. Plaintiff failed to offer any evidence tending to suggest that similarly situated employees outside her protected class (female) were treated differently. She, therefore, has failed to establish a prima facie case of discrimination. Jones v. Forrest City Grocery Inc., No.: 4:06cv00944, 2008 U.S. Dist. LEXIS 47673, at *10 (E.D. Ark. June 19, 2008). Accordingly the Court grants Defendant's Motion for Summary Judgment on Plaintiff's wrongful termination claim.

    B.    Legitimate Nondiscriminatory Reason

Even if Plaintiff made a prima facie case, Plaintiff's wrongful termination claim fails because Defendant provided a legitimate nondiscriminatory reason for terminating Plaintiff's employment. As discussed previously, the evidence before the Court demonstrates that Plaintiff was not meeting Defendant's legitimate job expectations and, consequently, Defendant issued written counselings to Plaintiff and ultimately terminated her employment. "Defendants articulated legitimate, nondiscriminatory reasons for its employment decision. Courts are not permitted to second-guess an employer's personnel decision or to correct an unwise decision if the employer gives an honest, nondiscriminatory explanation for its decision." McCullough v. Univ. of Ark. for Med. Scis., No.

p. 243).

4:06CV00390, 2008 U.S. Dist. LEXIS 2739, at *21-22 (E.D. Ark. Jan. 14, 2008) (citing Gill v. Reorganized Sch. Dist R-6, 32 F.3d 376, 379 (8th Cir. 1994)).

Plaintiff has not provided any evidence that she did not receive these counselings or that the bases for these counselings were unfounded. Accordingly, Defendant has provided a legitimate nondiscriminatory basis for discharging Plaintiff, which supports granting summary judgment.

## II.      Harassment

### A.      Exhaustion of Remedies

Before initiating a civil action under the MHRA, a claimant must exhaust administrative remedies by timely filing an administrative complaint and either adjudicating the claim through the Missouri Commission on Human Rights (MCHR) or obtaining a right-to-sue letter. Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. Mo. 1994) (citing Mo. Ann. Stat. §§ 213.075, 213.111(1)). "Exhaustion requires a claimant to give notice of all claims of discrimination in the administrative complaint, but administrative complaints are interpreted liberally in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices." Tart, 31 F.3d at 671 (citations omitted). Courts deem administrative remedies exhausted as to all incidents of discrimination that are like or reasonably related to the allegations of the charge filed with the MCHR. Id. While courts do not require that subsequently-filed lawsuits mirror the administrative charges, a judicial complaint can only be as broad as the scope of the administrative investigation that could reasonably be expected to grow out of the charge of discrimination. Duncan v. Delta Consol. Indus., 371 F.3d 1020, 1025 (8th Cir. 2004) (citations omitted).

Defendant asserts that Plaintiff failed to exhaust her administrative remedies on her sexual harassment charge. (Memorandum in Support, p. 13). In her Charge of Discrimination, Plaintiff

alleged sex discrimination, but did not include any claim of sexual harassment. (Doc. No. 32-5, p.

28). Specifically, Plaintiff stated in her charge of discrimination as follows:

I.       On 12/02/07 I was discharged.  Prior to my discharge I was suspected of theft/missing
merchandise.  I deny this charge and Management is aware that an error in merchandise description
had been made.  I am aware that coworkers (males) had been suspected of theft and were demoted,
but not discharged.  I believe that I was discharged due to my sex, female.
II.      As remedy I seek back pay, an end to Respondent's discriminatory practices and whatever
else the Commission deems just and proper.

(Doc. No. 32-5, p. 28).

Plaintiff failed to exhaust her administrative remedies on her harassment claim as she failed

to include any allegation of harassment in the MCHR charge that she filed, and her harassment claims

are not reasonably related to the claims contained in that charge. Whitlock v. Ark. Blue Cross & Blue

Shield, No. 4:08CV00243, 2009 U.S. Dist. LEXIS 94649, at *20 (E.D. Ark. Oct. 9, 2009) (citing

Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir. 2000)).  Noticeably absent

from Plaintiff's charge of discrimination are any claims regarding statements made by Baker and

Martin that supposedly form the basis of Plaintiff's harassment claim.  The Court concludes that

Plaintiff's Charge of Discrimination, when liberally construed, does not assert a claim based on

harassment, and that Plaintiff's claims of harassment are not like or related to her claim of sex

discrimination. Donnelly v. St. John's Mercy Med. Ctr., 635 F. Supp. 2d 970, 999 (E.D. Mo. 2009);

see also Tart, 31 F.3d at 673 (an administrative investigation of plaintiff's discriminatory discharge

complaint would not reasonably be expected to uncover evidence of racial harassment); see also

Duncan, 371 F.3d at 1025-26 (pro se plaintiff did not check the "sex" box on her administrative

complaint  form and, therefore, plaintiff's sexual harassment claim was outside the scope of the

administrative charge and thus could not be litigated in the action).[17]  Consequently, Plaintiff's

_____

    [17]Although the MCHR Charge of Discrimination does not include a "box" to check for
harassment (Doc. No. 32-5, p. 28), Plaintiff's allegations in the Charge do not include any claims

harassment claims are time barred as she did not file a charge of harassment with the MCHR within the required 180 days of the alleged harassment occurrences.

B.    Reporting

"[A]n employer is not 'automatically' liable for harassment by a supervisor who creates the requisite degree of discrimination." Faragher v. City of Boca Raton, 524 U.S. 775, 804, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 72, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)). An employer may "show as an affirmative defense to liability that the employer had exercised reasonable care to avoid harassment and to eliminate it when it might occur, and that the complaining employee had failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." Faragher, 524 U.S. at 805. The Faragher affirmative defense "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 807.

Defendant claims that it is entitled to the Faragher affirmative defense because Plaintiff failed to take advantage of its anti-harassment policy and complaint procedures. (Memorandum in Support, p. 18). Defendant's policy manual contains a non-discrimination and sexual harassment policy and a rules of conduct policy. (Martin Dec., ¶ 20).[18] Plaintiff acknowledged receipt of Defendant's

---

related to harassment. "Although it is worth noting that there is no 'harassment/hostile work environment' box to check on the EEOC charge, plaintiff's narrative lacks any mention of 'severe or pervasive' conduct or a racially charged work environment." Ewing v. Fresh Ideas Mgmt. LLC, No. 4:07CV1068, 2007 U.S. Dist. LEXIS 87123, at *9 (E.D. Mo. Nov. 27, 2007).

[18]The manual provides in pertinent part as follows:
If you feel you have been discriminated against, sexually harassed, or denied advancement for which

employee manual. (DSUMF, ¶¶ 6-7).[19]  Plaintiff asserted that she contacted Martin to report Baker's purportedly insensitive remarks towards her regarding her stitches.  (DSUMF, ¶ 36; Pl's Depo., pp. 172, 249-50).  Plaintiff, however, never called the toll-free number in Defendant's harassment policy to complain of discrimination.  (Pl's Depo., p. 249).

In her Response, Plaintiff asserts that Defendant is not entitled to the <u>Faragher</u> defense because "Plaintiff was terminated, which is a tangible employment action," and because Plaintiff complained of harassment to her supervisor Brad Martin.  (Response, p. 7).  See <u>Faragher</u>, 524 U.S. at 809 (no affirmative defense is available when the supervisor's harassment culminates in a tangible employment action such as termination).  Defendant responds that Plaintiff has not claimed that the harassment culminated in her termination.  (Reply, pp. 9-10).  Rather, the harassment and termination appear to be two separate events.

Plaintiff has alleged that she was retaliated against because of her complaints of harassment and discrimination.  (Compl., ¶ 38).  Thus, it appears that Plaintiff may be alleging that her termination was related to the harassment.  Accordingly, the Court cannot find as a matter of law that Defendant is entitled to the <u>Faragher</u> defense.  Nevertheless, the Court, as discussed above, grants summary judgment on Plaintiff's harassment claim on other grounds.

C.      Remarks not Severe or Pervasive

---

you are qualified, please call the Atlanta Home Office toll free at 800-335-2033 to report any such situation.  Your concerns will be investigated and swift an appropriate remedial action will be taken if violations of our policy are discovered.  Be assured that your call will be treated in the strictest confidence possible and you will incur no reprisal for reporting good faith claims.  (Doc. No. 32-8, p. 15).  <u>Adams v. O'Reilly Auto., Inc.</u>, 538 F.3d 926, 929 (8th Cir. 2008) (the Eighth Circuit found that a similar policy entitled the employer to the <u>Faragher</u> affirmative defense).

[19]Unlike <u>Adams v. O'Reilly Auto., Inc.</u>, the parties do not seem to dispute whether the policy was reasonable and properly enforced.  <u>Id.</u> at 929.

Even if Plaintiff had not exhausted her administrative remedies with the EEOC, she fails to state a claim for harassment. To be actionable, harassment must be "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" Faragher, 524 U.S. at 786 (quoting Meritor Sav. Bank, FSB, 477 U.S. at 67) (alteration in original). As discussed above, the few stray remarks identified by Plaintiff are insufficient as a matter of law for a harassment claim. See Anderson v. Family Dollar Stores of Ark., Inc., 579 F.3d 858, 862 (8th Cir. 2009) (supervisor's conduct of rubbing plaintiff's shoulders or back at times during her training session, calling plaintiff "baby doll" during a telephone conversation, accusing her of not wanting to be "one of my girls," "his one-time, long-distance suggestion that she should be in bed with him and a Mai Tai in Florida, and the insinuation that she could go farther in the company if she got along with him, 'simply were not severe, pervasive or demeaning enough to have altered a term, condition, or privilege of her employment.'"); Henthorn v. Capitol Communs., Inc., 359 F.3d 1021, 1027-28 (8th Cir. 2004) (although plaintiff's supervisor's "comments and actions were inappropriate, immature, and unprofessional, they did not cross the high threshold required to support a claim of sexual harassment").

The stray remarks cited by Plaintiff are insufficient to support a claim of harassment under the MHRA. Plaintiff has presented no evidence that Martin's or Baker's conduct affected a term, condition or privilege of her employment. Accordingly, the Court granted Defendant's Motion for Summary Judgment on Plaintiff's harassment claim.

## III.  Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that she engaged in statutorily protected conduct, that defendants took an adverse employment action against her, and

that there was a causal link between the two actions.  McCullough, 559 F.3d at 864 (citing Wallace v. Sparks Health Sys., 415 F.3d 853, 858 (8th Cir. 2005)).[20]

"Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative agency] charge would circumscribe the [MCHR's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely [MCHR] charge." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994) (quotations omitted). "[I]t is well established that retaliation claims are not reasonably related to underlying discrimination claims." Wallin v. Minn. Dep't of Corr., 153 F.3d 681, 688 (8th Cir. 1998). Plaintiff's retaliation claim could only be considered if it arose out of her filing the charge of discrimination. Id.; Williams, 21 F.3d at 223 ("claims of race discrimination are separate and distinct from her claims of retaliation").

Plaintiff did not check the "retaliation" box on her Charge of Discrimination filed with the MCHR. (Doc. No. 32-5, p. 28). See Strouss v. Mich. Dep't of Corr., 75 F. Supp. 2d 711, 724, n. 10 (E.D. Mich. 1999); Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 760 (8th Cir. 2004) (where plaintiff did not check the box next to "retaliation" on the complaint form, plaintiff failed to exhaust his administrative remedies and trial court properly granted summary judgment). In her Complaint, however, Plaintiff alleges that she "repeatedly told her managers to stop their harassing, demeaning and discriminatory conduct and statements towards her[.]" (Compl., ¶ 20). Plaintiff further alleges that "Defendant terminated the Plaintiff on or about December 3, 2007 because of her

---

[20]"The retaliation prohibition in the MHRA parallels a similar provision under federal law in Title VII. Both statutes contains an opposition clause, which prevents employers from firing an employee for opposing an unlawful employment practice." Richey v. City of Independence, 540 F.3d 779, 783 (8th Cir. 2008) (citing Mo. Rev. Stat. § 213.070(2); 42 U.S.C. § 2000e-3(a)).

sex and in retaliation [for] her complaints of disparate treatment." (Compl., ¶ 25). Specifically, Plaintiff alleged that "Defendant Aaron Rents retaliated and discriminated against Plaintiff because she opposed practices prohibited by Chapter 213 R.S. Mo. and/or because she filed a complaint, testified, assisted, or participated in investigations, proceedings or hearings conducted pursuant to Chapter 213[.]" (Compl., ¶ 29). Plaintiff claims that a reasonable fact finder could "conclude that her complaints of the discrimination and harassment were a contributing factor in the decision to terminate her." (Response, p. 7).

The retaliation Plaintiff alleges was not the result of her filing of the EEOC charge. Indeed, the retaliation alleged by Plaintiff occurred at the same time as the alleged discrimination, long before she filed a charge of discrimination with the MCHR. Because Hood did not allege retaliation in her MCHR charge, the Court need not consider this claim. See Watson v. O'Neill, 365 F.3d 609, 614 (8th Cir. 2004) (plaintiff effectively raised claims of race and gender discrimination with the EEOC but his failure to assert a retaliatory motive related to his non-selection for a promotion was fatal to his retaliation claim). Plaintiff failed to exhaust her administrative remedies on her retaliation claim, therefore, this Court grants summary judgment.

## IV. Emotional Distress

Plaintiff admits that she does not attempt to state a separate claim for emotional distress. The parties have clarified that Plaintiff seeks compensation for emotional distress damages only as part of her claim under the MHRA. (Response, p. 7).

## V. Service Letter Request

A.      Liability

Plaintiff claims that she has sufficient evidence to prove that Defendant did not comply with

the service letter statute, Mo.Rev.Stat. §290.140.[21]  Plaintiff alleges that she sent out her request for

a service letter on or around December 5th or 7th of 2007.  (Pl's Depo., p. 63; Response, pp. 8-9).

Plaintiff asserts that she did not receive a response to her service letter request prior to filing her

Petition on October 14, 2008.  (Response, p. 9; PSUMF, ¶ 42).

On November 26, 2008, Alisa Cleek, counsel for Aaron's, sent Plaintiff's counsel a letter

stating that Aaron's was "unaware of any request" by Plaintiff for a service letter and requesting a

copy of the service letter.  (Doc. No. 33-8).  D. Chad Strickland, Aaron's Vice President of Employee

Relations, sent Plaintiff a letter, dated January 23, 2009, that complied with the service letter statute.

(Doc. No. 33-7).  Therein, Strickland stated, "[w]e apologize for the delay in responding to your

request and are currently trying to determine whether we originally received it from our registered

---

[21] Section 290.140 provides:

1.      Whenever any employee of any corporation doing business in this state and which employs
seven or more employees, who shall have been in the service of said corporation for a period of at
least ninety days, shall be discharged or voluntarily quit the service of such corporation and who
thereafter within a reasonable period of time, but not later than one year following the date the
employee was discharged or voluntarily quit, requests in writing by certified mail to the
superintendent, manager or registered agent of said corporation, with specific reference to the statute,
it shall be the duty of the superintendent or manager of said corporation to issue to such employee,
within forty-five days after the receipt of such request, a letter, duly signed by such superintendent
or manager, setting forth the nature and character of service rendered by such employee to such
corporation and the duration thereof, and truly stating for what cause, if any, such employee was
discharged or voluntarily quit such service.
2.      Any corporation which violates the provisions of subsection 1 of this section shall be liable
for compensatory but not punitive damages but in the event that the evidence establishes that the
employer did not issue the requested letter, said employer may be liable for nominal and punitive
damages; but no award of punitive damages under this section shall be based upon the content of any
such letter.

agent and if so, the reason it was not responded to when initially sent." (Id.)  Since Cleek and Strickland sent these letters, however, Aaron's Vanessa Adams attested that she responded to Plaintiff's service letter request within two (2) weeks of receiving it.  (DSUMF, ¶ 38).  Adams also attested that she responded to Plaintiff's service letter request no later than December 24, 2007, but she did not retain a copy of her response.  (Supplemental Declaration of Vanessa Adams, Doc. No. 35-6).

"An employee who is entitled to a service letter, 'has a cause of action if the corporation fails to issue the letter or issues a letter not conforming to all the statutory requirements.'"  Callantine v. Staff Builders, Inc., 271 F.3d 1124, 1132 (8th Cir. 2001) (citing Labrier v. Anheuser Ford, Inc., 621 S.W.2d 51, 56 (Mo. 1981) (en banc)).  "The failure to give a proper service letter is an invasion of the employee's legal rights, and an employee is entitled to a judgment for nominal damages without proof of any actual damages.  Callantine, 271 F.3d at 1132 (citing Herberholt v. dePaul Cmty. Health Ctr., 625 S.W.2d 617, 622 (Mo. 1981) (en banc)).

The Court finds that there is an issue of fact regarding whether Defendant complied with Plaintiff's request for a service letter.  See Boone v. Wal-Mart Stores, Inc., No. 4:08CV9, 2009 U.S. Dist. LEXIS 32123, at *17 (E.D. Mo. Apr. 16, 2009) (where Defendant claimed it fully complied with the statute and Plaintiff, in her affidavit, denied having received a response to her service letter request, "[t]he conflicting evidence in the record before the Court preclude[d] summary judgment on Plaintiff's service letter claim").  Defendant, however, raised in its summary judgment whether Plaintiff would be entitled to any actual or punitive damages under the Missouri Service Letter Statute, which the Court addresses below.  Plaintiff failed to address these issues in her Response. (Response, pp. 8-9).

B.     Damages

1.    Actual Damages

To prove actual damages resulted from the service letter, a plaintiff must show: (1) she was refused employment or was hindered in obtaining employment, (2) that the refusal or hindrance was caused by the absence or inadequacy of the service letter, (3) that the position plaintiff had difficulty obtaining was actually open, and (4) the salary rate of the position. Ruzicka v. Hart Printing Co., 21 S.W.3d 67, 75 (Mo. Ct. App. 2000) (citing Kling v. Professional Care Center, Inc., 735 S.W.2d 168, 169 (Mo. Ct. App. 1987)); Moore v. DaimlerChrysler Corp., No. 4:06CV757, 2007 U.S. Dist. LEXIS 17742, at *19 (E.D. Mo. Mar. 14, 2007) (citing Jasperson v. Purolator Courier Corp., 765 F.2d 736, 742 (8th Cir. 1985)). "In other words, [Plaintiff] must show a potential employer held the service letter against him." Kling, 735 S.W.2d at169. If a service letter does not hinder the former employee from obtaining employment, the plaintiff has not sustained actual damages from the service letter. Ruzicka, 21 S.W.3d at 75.

Here, Plaintiff stated that someone in human resources for Verizon requested her service letter. (Pl's Depo., p. 64). Plaintiff claimed that she was unable to obtain employment with Verizon because Verizon was unable to verify her previous employment. (Pl's Depo., p. 65). Plaintiff, however, did not provided any evidence that her lack of a service letter precluded her from obtaining employment. See Jasperson, 765 F.2d at 742 (plaintiff's subjective belief that her job search was hindered because she could not show prospective employers a letter from defendant did not establish a submissible case on the issue of actual damages). Moreover, Plaintiff has not provided any information from which a claim for actual damages could be derived. Plaintiff did not identify the job for which she was applying, the rate of pay or any other information that would support an actual damages finding. Accordingly, the Court will grant summary judgment in favor of Defendant on Plaintiff's claim for actual damages.

2.    Punitive Damages

"[A]n employer's mere failure to respond to a service letter request, by itself, is insufficient grounds to award punitive damages." Callantine, 271 F.3d at 1132 (citing cases). A plaintiff must also show malice or that defendant did a wrongful act intentionally without just cause or excuse. Id. Plaintiff has failed to present any evidence to support a claim for punitive damages. The evidence, rather, shows that Defendant attempted to comply with Plaintiff's request for a service letter and responded promptly upon Plaintiff's notification that she had not received a service letter. The Court finds no evidence to support a finding that Defendant acted with malice or failed to respond intentionally or without just cause or excuse.

3.    Conclusion

The Court finds that Plaintiff is unable to submit a claim for actual or punitive damages under the Missouri Service Letter Statute. In her Complaint, Plaintiff prayed for nominal, actual and punitive damages.[22] This Court grants Defendant's Motion for Summary Judgment on Plaintiff's claim under the Missouri Service Letter Statute with respect to her claims for actual and punitive damages, but Plaintiff's can maintain her claim under the Missouri Service Letter Statute for nominal damages. See Jasperson, 765 F.2d at 737 (affirming the judgment in favor of plaintiff but remanding with instructions that the district court reduce the award of damages to $1.00); Ross v. Sioux Chief Mfg. Co., No. 02-1173, 2005 U.S. Dist. LEXIS 32325, at *33 (W.D. Mo. Sept. 7, 2005) ("The failure to state a cause for discharge or supply any other required information constitutes a refusal to issue a service letter and entitles an employee to nominal damages without proof of actual damages.").

---

[22]In her Complaint, Plaintiff also prayed for attorneys' fees under her Missouri Service Letter Statute claim. The Missouri Service Letter Statute, however, does not afford a plaintiff attorneys' fees. See Mo. Rev. Stat. § 290.140.2.

This Court, however, obtained jurisdiction over this case based upon diversity jurisdiction. In Notice of Removal, Defendant asserted that the matter in controversy exceeded the jurisdictional amount. (Doc. No. 1). After ruling on Defendant's Motion for Summary Judgment, the Court finds that only nominal damages related Plaintiff's claim under the Missouri Service Letter Statute remain. As the amount in controversy no longer meets the jurisdictional amount, the Court dismisses this action for lack of subject matter jurisdiction. See Atlakson v. Harley Davidson Motor Co. Group, Inc., No. 07-6071, 2008 U.S. Dist. LEXIS 78926, *15-17(W.D. Mo. Oct. 6, 2008) (declining to exercise supplemental jurisdiction over service letter claim where only claims for nominal and punitive damages remained).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 31) is **GRANTED**, in part, and **DENIED**, in part. The Court grants Summary Judgment to Defendant on Counts I and II of Plaintiff's Complaint. The Court also grants Summary Judgment to Defendant on Plaintiff's claims for actual and punitive damages under Count III.

**IT IS HEREBY FURTHER ORDERED** that Plaintiff's claims for discrimination under the MHRA (Count I) and retaliation under the MHRA (Count II) are dismissed, with prejudice.

**IT IS HEREBY FURTHER ORDERED** that Plaintiff's claims for actual and punitive damages under the Missouri Service Letter Statute (Count III) are dismissed, with prejudice.

**IT IS HEREBY FURTHER ORDERED** that any of Plaintiff's remaining claims under the Missouri Service Letter Statute (Count III) are dismissed for lack of subject matter jurisdiction.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this <u>7th</u> day of December, 2009.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE